IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NetJets, Inc., *et al.*, | : | |
| Plaintiffs | : | Civil Action 2:12-cv-00059 |
| v. | : | Judge Frost |
| IntelliJet Group, LLC, | : | Magistrate Judge Abel |
| Defendant | : | |

## Discovery Dispute Conference Order

On April 29, 2013, counsel for the parties appeared for an informal discovery dispute conference. IntelliJet seeks (1) all documents regarding market surveys, reports and the like, including memos and emails transmitting or discussing market surveys and reports; (2) after that production, a followup deposition of Lauren Fryefield, NetJets' Rule 30(b)(6) witness regarding marketing; and (3) an order barring NetJets from offering affidavits on summary judgment or testimony at trial from newly disclosed witnesses David Lawrence, Ann Marie Thomas, John Odegard, Robert Patris, and Mike Midkiff.

**Underlying facts.** NetJets sells "shares" in passenger service aircraft. Their customers can then use that aircraft or other aircraft for transportation services, paying additional fees for each flight. NetJets maintains the aircraft, provides pilots, and provides other services in connection with scheduled flights.  NetJets' IntelliJet software is flight management software. The software is used to schedule the flights, provide

weather information, keep track of fuel, assign runways, assign pilots, provide for the customer's needs during the flight, and the like. Intellijet is a broker which brings together buyers and sellers of used jet aircraft. Issues in this lawsuit include whether NetJets and Intellijets are competitors, whether NetJets advertises or otherwise uses the IntelliJet mark in the marketplace, and whether IntelliJet's use of that name causes confusion in the marketplace.

<u>Requests for marketing surveys, reports, and the like</u>. IntelliJet's November 20, 2012 second set of requests for production of documents, Request No. 7 sought "documents relating to or discussing the competitive landscape for NetJets, including but not limited to, market surveys, internal analyses of competitors, and any surveys, studies and/or presentations made by any advertising agencies for NetJets for the purpose of identifying NetJets' competitors and target customers." NetJets produced none.

Two NetJets Rule 30(b)(6) deponents were questioned about NetJets' competitors. Lauren Fryefield, Vice President for Marketing, testified as NetJets' witness regarding Topics 1, 3, 5, 6 and 7. Fryefield testified that anyone who participated in the private aviation space, from carriers offering commercial first class airline seats to companies that sell or lease whole aircraft and companies like NetJets, FlexJet, Avantair, CitationAir, and XOJet in the fractional air space was a competitor. Fryefield Dep., pp. 73-47, Doc. 40, PageID 253-54. She knew of no marketing materials or surveys about the name recognition of the IntelliJet mark. Fryefield Dep., p. 92, ll. 6-

18, Doc. 40, PageID 636. She was not asked about surveys or reports on NetJets' competitors, presumably because NetJets had previously responded to the November 20 Request No. 7 that there were no such documents.[1]

John Dunning, an IT specialist, was designated NetJets' Rule 30(b)(6) witness regarding the use of the IntelliJet software for leasing and sales. During his January 24, 2013 deposition, Dunning testified that everyone in our private jet space is a competitor. Dunning Dep., pp. 77, ll. l6-19, 237-38, ll. 16-4, Doc. 41, PageID 960 and 1120-21. Dunning, according to defendant's counsel, was able to provide little information about competitors, who had access to the IntelliJet software on NetJets' server, and whether Marquis Jet customers have access to the software. Dunning testified that he didn't do anything to prepare for the deposition. Dunning Dep., p. 11, ll. l6-19, Doc. 41, PageID 894.

On January 18, 2013, IntelliJet served a third set of request for production of documents. Request No. 12 sought "documents which mention or discuss NetJets' competitors in the fractional share aviation business." After discussions between counsel that included IntelliJet's counsel's forceful argument that after Fryefield and Dunning had defined NetJets' competitors as everyone in the aviation business defendant was entitled to NetJets' internal marketing studies, reports and analysis about who its principal competitors are and how advertising dollars should be spent to

---

[1]Fryefield testified that she was the person in the marketing department primarily responsible for searching for documents responsive to IntelliJet's document requests. Fryefield Dep., pp. 8- 11, ll. 8-14 and ll. 22-8, Doc. 40, PageID 552-555.

compete in the marketplace with them. March 11, 2013 Letter from Mary R. True to Michael Speed and April 24, 2013 Letter from Mary R. True to Michael Speed and Beverly A. Marsh. Late Friday, April 12, NetJets for the first time included an August 2012 *Wall Street Journal* "Brand Awareness Survey - Wave 13" and an August 17, 2012 "Industry Intelligence Report." On April 23, NetJets produced another 900 pages of marketing reports and surveys. It now appears that NetJets has had monthly surveys and/or market reports on its market share and that of its direct competitors since 1998. NetJets has still to produce any underlying documents, distribution lists, or memos/emails discussing these surveys and reports.

During the April 29 conference, NetJets' counsel said that the request for marketing surveys and reports simply didn't ring any bells with the person responsible for responding to IntelliJet's document requests. In April, the re-worded request struck a bell. NetJets' counsel believes that the surveys and market reports produced so far were made or commissioned by a small department in Columbus that is a strategic planning/market analysis department. The marketing departments in New York City, counsel are led to believe, didn't receive those surveys and reports, but further investigation is needed to determine the provenance and distribution of them.

Supplemental 26(a)(1) disclosures. NetJets advances no explanation for disclosing six new witnesses just 15 days before the deadline for completing all discovery other than that Ms. Fryefield lost her position as Vice President for Marketing in a reorganization that took effect during the last two weeks. NetJets seeks to offer

marketing testimony from Ann Marie Thoms, who is now NetJets' chief marketing officer.

Discovery conference order. During the April 29 discovery dispute conference, NetJets agreed to determine whether Ms. Fryefield is available for a resumption of her deposition in Columbus and, if not, in New York City. NetJets will also provide the court with affidavits and supporting documents setting out the timeline of the marketing department reorganization and Ms. Fryefield's separation from her position as Vice President for Marketing.

NetJets will search the marketing department and the strategic planning/market analysis department for marketing reports and surveys, distribution lists, and memos and emails discussing them and produce them promptly.

Dispostion. I am going to reserve ruling regarding what actions to take regarding the late production of the surveys and market reports (and the failure to date to produce distribution lists and memos/emails discussing the surveys and reports) until NetJets has an opportunity to conduct a further investigation and provide additional information to opposing counsel and the court.

IntelliJet has the right to resume the deposition of Ms. Fryefield regarding the the surveys, market reports and related documents, the search for them, and their late production. NetJets is also free to present the court with the facts surrounding Ms. Fryefield's departure from the company and Ms. Thomas's assumption of the duties of chief marketing department officer and to attempt to demonstrate good cause to offer

her testimony at trial regarding NetJets' marketing activities and the marketing activities of its competitors.

As to David Lawrence, John Odegard, Robert Patris, and Mike Midkiff, Rule 26(e) provides:

> (1) In General. A party who has made a disclosure under Rule 26(a) — or who has responded to an interrogatory, request for production, or request for admission — must supplement or correct its disclosure or response:
>> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>> (B) as ordered by the court.

NetJets is free to offer evidence and argument to demonstrate that supplementing its Rule 26(a)(2) disclosures of witnesses who might offer testimony supporting its claims and defenses was made "in a timely manner." Unless I misread Rule 26(e)(1)(A), the fact that prospective witnesses helped gather information to answer an interrogatory or were identified in a deposition as people who have provided information or were involved in business tasks having some relationship to the business operations at issue in the litigation is not sufficient to relieve a party of the obligation to make timely 26(a)(1) supplemental disclosures of those persons as witnesses it might call at trial. As I indicated at the April 29 conference, I am skeptical that disclosing six witnesses 15 days before the deadline for completing discovery without some very compelling reason gives the opposing party a fair opportunity to conduct discovery and defend itself in

-6-

the litigation. Timely disclosure of witnesses is important not only to scheduling and taking their depositions but also to planning discovery, crafting and serving written discovery, deciding what depositions to take, deciding the order in which those depositions are taken and the like.

s/ Mark R. Abel
United States Magistrate Judge
